FILED

2014 AUG -5 PM 2:59

1  GARY W. NEVERS, ESQ., SB#82512
    *gnevers@npwlaw.com*
2  ROXANNE TORABIAN-BASHARDOUST, ESQ., SB#222094
    *rtorabian@npwlaw.com*
3  NEVERS, PALAZZO, PACKARD,
   WILDERMUTH & WYNNER, PC
4  31248 Oak Crest Drive, Suite 100
   Westlake Village, California 91361
5  Telephone: (818) 879-9700
   Facsimile: (818) 879-9680
6
   Attorneys for Plair    Three Point Capital,
7  LLC

8                       'D STATES DISTRICT COURT

9                      OF CALIFORNIA, WESTERN DIVISION

10                   CV14-6137 DMG ASx

11 THREL        _APITAL, LLC, a    CASE NO.
12 Delawaı        ∟ liability company,
                                     COMPLAINT FOR:
13              Plaintiff,           (1) BREACH OF CONTRACT
                                     (2) MONEY HAD AND RECEIVED
14      vs.                          (3) UNJUST ENRICHMENT

15 THE  JOBS  FILM,  LLC,  a  Texas
   limited liability company; THE FIVE   DEMAND FOR JURY TRIAL
16 STAR  INSTITUTE,  LLC,  a  Texas
   limited liability company; and DOES 1
17 through 10, inclusive,

18              Defendant.

19
        Plaintiff Three Point Capital, LLC ("Plaintiff") hereby sues defendants The
20
   Jobs Film, LLC ("Jobs"), The Five Star Institute, LLC ("Five Star"), and Does 1-10
21
   for Breach of Contract, Money Had and Received, and Unjust Enrichment, and
22
   alleges:
23
                       **JURISDICTION AND VENUE**
24
        1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. section
25
   1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive
26
   of interest and costs, and is between citizens of different States.
27
        2.      Venue properly lies in this District pursuant to 28 U.S.C. section
28

                                      1
                                  COMPLAINT

1  1391(b)(2) because a substantial part of the events or omissions giving rise to the

2  claims alleged herein occurred in this District.   Pursuant to 28 U.S.C. section

3  1391(c)(2), Plaintiff is deemed to reside in this District because at the time that this

4  suit is being commenced and at the time of the allegations herein, Plaintiff's

5  principal place of business has been in this District and its contacts have been

6  sufficient to subject it to personal jurisdiction in this District.

7  **PARTIES**

8  3.   Plaintiff Three Point Capital, LLC is now, and at all times herein

9  mentioned was, a corporation organized and existing under the laws of the State of

10  Delaware, with its principal place of business in the City of Manhattan Beach, State

11  of California.  Plaintiff was authorized to do business, and at all relevant times was

12  and is doing business, in the County of Los Angeles, State of California, including

13  without limitation, the transactions described in this Complaint.   Accordingly,

14  jurisdiction is proper in the County of Los Angeles, State of California.

15  4.   Plaintiff is informed and believes and on that basis alleges that

16  Defendant The Jobs Film, LLC ("Jobs") is now, and at all times herein mentioned

17  was, a limited liability company organized and existing under the laws of the State

18  of Texas, with its principal place of business in the City of Dallas, State of Texas.

19  5.   Plaintiff is informed and believes and on that basis alleges that

20  Defendant The Five Star Institute, LLC ("Five Star") is now, and at all times herein

21  mentioned was, a limited liability company organized and existing under the laws of

22  the State of Texas, with its principal place of business in the City of Dallas, State of

23  Texas.

24  6.   Plaintiff is ignorant of the true names and capacities of the Defendants

25  sued herein as Does 1 through 10 inclusive, and therefore sues said Defendants by

26  such fictitious names.  Plaintiff will amend this Complaint to allege the true names

27  and capacities of such Defendants when ascertained.   Plaintiff is informed and

28  believes and based thereon alleges that each of the fictitiously named Defendants is

1  responsible in some manner for the occurrences herein alleged, and that Plaintiffs'
2  damages as herein alleged were proximately caused by their conduct.

3      7.    Venue is proper in this Court in that the Secured Promissory Note (as
4  defined below) was made, executed, and was to be performed within the County of
5  Los Angeles, State of California. Further, the Secured Promissory Note which is the
6  subject of this action states at Paragraph 10(a):

7      "Maker agrees that any action to enforce this Note, or any rights
8      hereunder, must be brought in a state or federal court having its situs
9      within the State of California, and no other court."

10              **GENERAL ALLEGATIONS**

11      8.    On December 10, 2013, Jobs and Five Star (collectively, the
12  "Borrowers"), signed a Secured Promissory Note in favor of Plaintiff (the "Note").
13  Under the terms of the Note, Plaintiff agreed to loan $2,650,000 to the Borrowers.
14  The Borrowers' obligation under the Note is called herein the "Indebtedness". A
15  true and correct copy of the Note is attached hereto as Exhibit 1, which is
16  incorporated herein by this reference.

17      9.    Pursuant to the Note, Borrowers agreed to pay Plaintiff the amount
18  loaned to Borrowers, namely, $2,650,000, with interest and other charges as set
19  forth in the Note.

20      10.    The Note required regular payments by the Borrowers and specifically
21  stated that "at least $780,000 in principal repayment shall be made by July 10,
22  2014." (Section 1.(b)(i).)   The Borrowers did not make sufficient payments to
23  reduce the principal in the required amount by July 10, 2014 and were therefore in
24  default.   The Note provides a six-day grace period for defaulted payments and
25  Borrowers remained in default after this grace period ended.

26      11.    The Note contains an acceleration clause which provides that upon
27  default, the total Indebtedness becomes immediately due and payable.   Plaintiff
28  provided notice of this acceleration and demanded immediate payment via a letter

1   dated August 4, 2014 (the "Notice of Acceleration"). A true and correct copy of the

2   Notice of Acceleration is attached as Exhibit 2 and incorporated herein.

3       12.   As of August 4, 2014, the Indebtedness is $2,141,427.22 with interest

4   accruing in a daily amount of $1,263.11.

5   **FIRST CAUSE OF ACTION**

6   **(Breach of Written Contract Against Defendants The Jobs Film, LLC, The**

7   **Five Star Institute, LLC, and Does 1 through 10)**

8       13.   Plaintiff repeats, repleads, and incorporates herein by reference each

9   allegation contained in paragraphs 1 through 12 as though fully set forth herein.

10       14.   Borrowers have defaulted under the terms of as specified above, and

11   the Borrowers and Does 1 through 10 (collectively, the "Defendants") have each

12   breached the terms of the Note by failing to make the payments required thereunder.

13   The amounts due under the Note have been accelerated.

14       15.   As a result, the following sums are immediately due and payable jointly

15   and severally from the Borrowers and Does 1 through 10 to Plaintiff:

16       (a)   The sum of $2,141,427.22 as of August 4, 2014, with daily

17   interest accruing at a daily amount of $1,263.11; and

18       (b)   Attorney's fees, costs, out-of-pocket expenses and all other sums

19   provided for in the Note.

20       16.   As a direct and proximate result of each of the Defendants' breaches of

21   the documents as alleged herein, Plaintiff is entitled to pre-judgment and post-

22   judgment interest according to proof at the time of trial and as allowed by law.

23   **SECOND CAUSE OF ACTION**

24   **(Money Had and Received Against Defendants The Jobs Film, LLC, The Five**

25   **Star Institute, LLC, and Does 1 through 10)**

26       17.   Plaintiff repeats, repleads, and incorporates herein by reference each

27   allegation contained in paragraphs 1 through 16 as though fully set forth herein.

28       18.   Within the past year, Borrowers and Does 1 through 10, and each of

1  them, became indebted to Plaintiff in the sum of $2,141,427.22 as of August 4,
2  2014, with daily interest accruing at a daily amount of $1,263.11 for money had and
3  received by Borrowers and Does 1 through 10, and each of them, for the use and
4  benefit of Plaintiff.

5      19.    Neither the whole, nor any part of this sum has been paid, although
6  demand therefore has been made.  There is now due, owing and unpaid from
7  Borrowers and Does 1 through 10, and each of them, to Plaintiff the sum of
8  $2,141,427.22 as of August 4, 2014, plus interest for all moneys paid under the
9  Note.

10  ### THIRD CAUSE OF ACTION

11  **(Unjust Enrichment Against Defendants The Jobs Film, LLC, The Five Star**
12  **Institute, LLC, and Does 1 through 10)**

13      20.    Plaintiff repeats, repleads, and incorporates herein by reference each
14  allegation contained in paragraphs 1 through 19 as though fully set forth herein.

15      21.    Plaintiff provided Borrowers and Does 1 through 10, and each of them,
16  $2,650,000.

17      22.    Plaintiff provided Borrowers and Does 1 through 10, and each of them,
18  with this benefit in exchange for the promise that Borrowers and Does 1 through 10,
19  and each of them, would make regular payments until the Indebtedness was paid in
20  full, and specifically, that at least $780,000 would be paid by July 10, 2014.

21      23.    On or about December 10, 2013, Borrowers and Does 1 through 10,
22  and each of them, received the benefit of this payment from Plaintiff.  Borrowers
23  and Does 1 through 10, and each of them, failed to perform pursuant to the parties'
24  agreement by not paying Plaintiff at least $780,000 in principal repayment by July
25  10, 2014.  Borrowers and Does 1 through 10, and each of them, furthermore failed
26  to perform pursuant to the Note by not repaying Plaintiff the total Indebtedness plus
27  interest.  Borrowers and Does 1 through 10, and each of them, have still failed to
28  repay Plaintiff $2,141,427.22 as of August 4, 2014.

24. For these reasons, Borrowers and Does 1 through 10, and each of them, have been unjustly enriched at Plaintiff's expense.

25. Plaintiff is, therefore, entitled to receive a refund of the payment of the $2,141,427.22 wrongfully retained by Borrowers and Does 1 through 10, and each of them, in an amount not less than $2,141,427.22 together with interest payable on the unpaid principal according to proof at trial.

WHEREFORE, Plaintiff prays for judgment jointly and severally against Defendant Five Star, Defendant Jobs and each of the Doe Defendants as follows:

For judgment against The Five Star Institute, LLC, The Jobs Film, LLC and Does 1 through 10, jointly and severally, as follows:

1. The sum of $2,141,427.22 as of August 4, 2014, with daily interest accruing at a rate of $1,263.11;

2. Attorneys' fees, costs, out-of-pocket expenses and all other sums provided for in the Note in an amount according to proof;

3. For pre-judgment interest at the highest default rate or legal rate according to proof and as allowed by law;

4. For post-judgment interest at the highest legal rate according to proof and as allowed by law;

5. For attorneys' fees pursuant to agreement or statute according to proof;

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1         6.     For costs of suit and expenses; and

2         7.     For such other and further relief as the Court deems just and

3 proper.

4

5 DATED: August 5, 2014          Nevers, Palazzo, Packard,

6                              Wildermuth & Wynner, PC

7

8                             By: /s/Gary W. Nevers

9                                Gary W. Nevers

10                                Roxanne Torabian-Bashardoust

11                                Attorneys for Plaintiff Three Point Capital, LLC

W:\Working\20818\07\W0124032.DOC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECURED PROMISSORY NOTE

$2,650,000                                                        December 10, 2013
                                                                 Manhattan Beach, California

FOR VALUE RECEIVED, the undersigned, THE JOBS FILM, LLC, a Texas limited liability company ("Jobs"), having its principal place of business at c/o The Five Star Institute, LLC, 1909 Woodall Rogers, Suite 300, Dallas, Texas 75201, and THE FIVE STAR INSTITUTE, LLC, a Texas limited liability company ("Five Star", and together with Jobs, collectively, the "Maker"), having its principal place of business at 1909 Woodall Rogers, Suite 300, Dallas, Texas 75201, promise to pay to the order of THREE POINT CAPITAL, LLC, a Delaware limited liability company ("Payee"), at 1334 Parkview Ave., Suite 100, Manhattan Beach, California 90266, or at such other place as the holder of this Note from time to time may designate in writing, the principal sum of Two Million Six Hundred Fifty Thousand Dollars ($2,650,000), or so much of such amount as may from time to time be disbursed and unpaid, together with interest on the unpaid principal amount of this Note from time to time outstanding at the rate of 15.00% per annum (the "Interest Rate") in lawful money of the United States of America. This Note shall be repaid in full by no later than March 10, 2016 (the "Maturity Date").

1.     Payments of Principal and Interest.

        (a)     Interest Payments. On the tenth day of each month commencing on January 10, 2013 up to January 10, 2014 (each a "Payment Date"), Maker shall pay to Payee the amount of interest which shall have accrued at the Interest Rate for the preceding one month period.

        (b)     Principal Reduction Requirements. In addition to payments of accrued interest as provided in Section 1(a) above, on each Payment Date Maker shall repay to Payee the outstanding principal amount of this Note in the amounts set forth below:

                (i)     At least $780,000 in principal repayment shall be made by July 10, 2014; and

                (ii)    Commencing on July 10, 2014 and for the following six consecutive Payment Dates, the Maker shall make principal repayments in an amount no less than the outstanding principal amount of this Note as of July 10, 2014 minus $1,050,000 divided by six.

        (c)     Term Out Period. On the tenth day of each month commencing on January 10, 2015 up to the Maturity Date (each a "Term Out Payment Date"), Maker shall pay to Payee an amount equal to the outstanding principal amount of this Note as of December 10, 2014 multiplied by 0.075 ("Term Out Payments"). These fifteen equal Term Out Payments include both factoring interest and principal.

        (d)     Initial Source of Payments. Payee currently holds certain proceeds from credit card sales of Five Star in a merchant account (the "Merchant Account") identified in (i) a

1

Exhibit_____

letter titled Credit Card Payment Processing Instructions dated May 21, 2013, executed by Five Star and addressed to Bank of America, N.A., for the benefit of Payee, and (ii) a letter titled Financing Agreement – Assignment of Credit Card Receivables dated July 3, 2013, executed by Five Star and addressed to American Express Travel Related Services Company, Inc. for the benefit of Payee. Maker hereby authorizes Payee to pay itself the payments of principal and interest set forth in Sections 1(a) through 1(c) above on or before the due date of each such payment by withdrawing funds from the Merchant Account. Notwithstanding the foregoing, so long as no "Event of Default" (as defined below) has occurred and is continuing, on the 10th day of each month, Payee shall deliver to Five Star (A) any cash remaining in the Merchant Account after the payment of each scheduled payment, less (B) $10,000, along with a statement of the amount applied toward the obligations of this Note. Payee shall at all times retain at least $10,000 in the Merchant Account to cover credit card processing fees and other expenses incurred in connection with the Merchant Account.

(e)     Payment on Maturity Date. The entire unpaid principal amount of this Note, together with any accrued and unpaid interest and any other amounts then due under the "Loan Documents" (as defined below), shall be due and payable on the Maturity Date, unless such amounts become due and payable sooner because of acceleration, in which case they shall be due and payable in full on the date of such acceleration.

2.     Payment Provisions. All payments received by Payee later than 1:00 p.m. (Los Angeles time) shall be considered received on the following business day. Receipt of a check for any payments under this Note in and of itself shall not constitute payment. Interest payable under this Note shall be calculated on the basis of a 360-day year and the actual number of days elapsed. Payee may apply any payments made pursuant to the terms of this Note and the other Loan Documents first to the payment of accrued and unpaid interest and then to the payment of outstanding principal.

3.     Loan Documents. Repayment of this Note is secured by (a) the Security Agreement (Credit Documents) dated as of the date of this Note ("Credit Documents Security Agreement"), executed by Maker for the benefit of Payee, (b) the Security Agreement (Five Star Assets) dated as of the date of this Note (the "Five Star Security Agreement", and together with the Credit Documents Security Agreement, collectively, the "Security Agreements"), executed by Five Star for the benefit of Payee, executed by Magnolia Publishing Partnership, Ltd., a Texas limited partnership, for the benefit of Payee, each pledging an or encumbering the property described therein (the "Property"), and by other security evidenced by agreements, instruments and documents executed concurrently with this Note or from time to time after this date executed and delivered by or on behalf of Maker to Payee. This Note, the Security Agreements and all other documents, agreements and instruments evidencing, securing or delivered in connection with the loan made pursuant to this Note are collectively referred to in this Note as the "Loan Documents."

4.     Prepayment. Upon not less than two business days' notice to Payee, Maker shall have the right to prepay amounts owing under this Note.

5.     Late Charges. If any installment of principal or interest due under this Note, or any monthly deposit of taxes or insurance if required by the Security Agreements, shall become

2


Exhibit ____

overdue for a period longer than ten days, Maker shall pay to Payee a late charge of two and one-half of one cent for each dollar so overdue. Maker acknowledges that late payment to Payee will cause Payee to incur costs it would not have to incur had payment been timely made, the exact amount of such costs being difficult and impracticable to assess. Such costs include, without limitation, processing and accounting charges and the potential costs to be incurred as a result of Payee's frustration and inability to meet its other commitments. The parties agree that the late charges represent a reasonable sum considering all of the circumstances existing as of the date of this Note and represent a fair and reasonable estimate of the costs that Payee will incur by reason of late payment. The parties further agree that proof of actual damages would be costly and inconvenient. Acceptance of any late charge shall not constitute a waiver of the default with respect to the overdue amount, and shall not prevent Payee from exercising any of the other rights and remedies available to Payee. The late charges shall be due and payable immediately without demand and shall be secured by the Security Agreements and any other Loan Document which grants a security interest.

6.      Events of Default. Any of the following events shall constitute an "Event of Default":

(a)     After a six-day grace period, Maker's failure to pay when due any installment of principal or interest under this Note, or any other sum required to be paid by the terms of any Loan Document or secured by the Security Agreements;

(b)     the occurrence of any "Transfer" (as defined in the Credit Documents Security Agreement) in violation of Section 5(l) of the Credit Documents Security Agreement;

(c)     the failure of Maker, within 30 days following notice from Payee, to observe or perform any covenant or other agreement contained in the Security Agreements other than those covenants and agreements set forth in Section 6(a) and (b) above; provided, however, that the notice and 30-day grace period set forth above shall be applicable only to a failure to observe or perform any covenant or other agreement which is reasonably susceptible of being cured; provided further, that should such party comprising Maker be unable to cure its failure within such 30-day period despite beginning to cure such failure promptly after receipt of notice and prosecuting such attempt diligently during such 30-day period, the cure period shall be extended an additional 60 days so long as (i) such party comprising Maker continues diligently to prosecute the cure during such additional period and (ii) such failure does not materially and adversely affect Payee or its rights under the Loan Documents;

(d)     any written representation, warranty or financial statement given by any party comprising Maker, any affiliate of any party comprising Maker or any surety of any of Maker's obligations shall have been untrue in any material respect when given;

(e)     the occurrence of a default under any of the Loan Documents (except those set forth in Sections 6(a), (b) or (c) above, which either cannot be cured or have alternate specific time-lines set forth above) and the failure of any such default to be cured during the permitted time, if any, for such cure;

(f)     any of the parties comprising Maker or any surety of any of Maker's obligations shall be unable or shall admit in writing its inability to pay its debts when due, or shall make an assignment for the benefit of creditors; or any of them shall apply for or consent to the appointment of any receiver, trustee or similar officer for such person or for all or any substantial part of such person's property; or any of them shall institute (by petition, application, answer, consent or otherwise) any bankruptcy, insolvency, reorganization, arrangement, readjustment of debts, dissolution, liquidation, or similar proceedings relating to such person under the laws of any jurisdiction;

(g)     if a receiver, trustee or similar officer shall be appointed for any of the parties comprising Maker or any surety of any of Maker's obligations, or for all or any substantial part of any such person's property without the application or consent of such person, and such appointment shall continue undischarged for a period of 60 days (whether or not consecutive); or any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceedings shall be instituted (by petition, application or otherwise) against any such person and shall remain undismissed for a period of 60 days (whether or not consecutive);

(h)     any portion of the Property, or all or any substantial part of the assets of any party comprising Maker or any surety of any of Maker's obligations, shall become subject to attachment, execution or judicial seizure (whether by enforcement of money judgment, by writ or warrant of attachment, or by any other process), and any such attachment, execution or other seizure remains undismissed or undischarged for a period of 60 days after levy, or, in any event, later than ten days prior to the date of any proposed sale;

(i)     Maker or any other person obligated shall be in default in the payment of any indebtedness or the performance of any other obligation secured by a lien on the Property, and such default is declared and is not cured within the time, if any, specified for such a cure in any applicable agreement; and

(j)     any of the Loan Documents, any guaranty of or surety obligation with respect to any of Maker's obligations, any agreement or instrument securing any such guaranty or other suretyship obligation, or any letter of credit issued for Payee's benefit shall cease to be a valid, binding and enforceable obligation of the person purported to be bound; or any of the liens of the Security Agreements, any Loan Document securing any of Maker's obligations or any security instrument securing any guaranty of Maker's obligations shall cease to be a valid and enforceable lien on the property it purports to encumber or fail to have the priority represented or warranted by any party comprising Maker or such guarantor or otherwise stated in any title insurance policy issued to Payee which insures the validity and priority of such lien; or any party comprising Maker shall assert such cessation or failure in writing.

7.     <u>Remedies</u>. Upon the occurrence and during the continuance of any Event of Default, Payee, at its option, may:

(a)     collect interest on the entire unpaid principal amount of this Note from time to time outstanding at a rate of interest (the "Default Rate") equal to the sum of the Interest Rate plus seven percent per annum from the date of the occurrence of such Event of Default;

4



**Exhibit**

       (b)     declare all of Maker's obligations under this Note and any other Loan Documents to be immediately due and payable, after written notice thereof to Maker and Guarantor; and

       (c)     pursue each other right remedy and power available to it under this Note or any of the other Loan Documents or available to it at law or equity.

       The rights, remedies and powers of Payee, as provided in this Note and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the property described in any of the Loan Documents, any guarantor of Maker's obligations and any other security given at any time to secure the payment of Maker's obligations, all at the sole discretion of Payee. Payee may resort to every other right or remedy available at law or in equity without first exhausting all rights and remedies contained in this Note, the Security Agreements or the other Loan Documents, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date shall not constitute a waiver of the right to exercise such right at any time during the continued existence of any Event of Default under any of the Loan Documents or in the event of any subsequent Event of Default under this Note or any of the other Loan Documents. Payee shall not by any other omission or act be deemed to waive any of its rights or remedies under the this Note or the other Loan Documents unless such waiver is contained in a writing signed by Payee, and then only to the extent specifically set forth in such writing. A waiver in connection with one event shall not be construed as continuing or as a bar to or waiver of any right or remedy in connection with a subsequent event.

      8.     Waivers and Consents. Maker and each endorser, guarantor, surety or accommodation party of this Note and each other person liable or to become liable for any part of the indebtedness evidenced by this Note, waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, and agree that their liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker and each such endorser, guarantor, surety, accommodation party and person liable or to become liable further consent to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any collateral given to secure the payment of amounts owing under this Note, with or without substitution, and agree that additional makers or guarantors or endorsers may become parties to this Note with written notice to Maker or any other parties and without affecting the liability of Maker or any other parties under this Note.

      9.     Due on Transfer. The Credit Documents Security Agreement includes a provision permitting the acceleration of the indebtedness evidenced by this Note upon any "Transfer", as defined therein.

10.   Miscellaneous.

(a)   Governing Law, Jurisdiction and Venue. This Note shall be governed by and construed in accordance with the laws of the State of California without regard to the conflict-of-laws provisions of such state. Maker agrees that any action to enforce this Note, or any rights hereunder, must be brought in a state or federal court having its situs within the State of California, and no other court.

(b)   Binding on Successors. This Note shall inure to the benefit of, and shall be binding upon, the successors and assigns of each of the parties to this Note.

(c)   Attorneys' Fees.

(i)   Maker shall reimburse Payee for all reasonable attorneys' fees, costs and expenses (including those of in-house counsel), incurred by Payee in connection with the enforcement of Payee's rights under this Note and each of the other Loan Documents, including, without limitation, reasonable attorneys' fees, costs and expenses for trial, appellate proceedings, out-of-court negotiations, workouts and settlements or for enforcement of rights under any state or federal statute, including, without limitation, reasonable attorneys' fees, costs and expenses incurred to protect Payee's security and attorneys' fees, costs and expenses incurred in bankruptcy and insolvency proceedings such as (but not limited to) seeking relief from stay in a bankruptcy proceeding. The term "expenses" means any expenses incurred by Payee in connection with any of the out-of-court, or state, federal or bankruptcy proceedings referred to above, including, without limitation, the fees and expenses of any appraisers, consultants and expert witnesses retained or consulted by Payee in connection with any such proceeding.

(ii)   Payee shall also be entitled to its reasonable attorneys' fees, costs and expenses incurred in any post-judgment proceedings to collect and enforce the judgment. This provision is separate and several and shall survive the merger of this Note into any judgment on this Note.

(d)   Entire Agreement. This Note and the other Loan Documents constitute the entire agreement and understanding between and among the parties in respect of the subject matter of such agreements and supersedes all prior agreements and understandings with respect to such subject matter, whether oral or written.

(e)   Waivers. Waiver by Payee of any term, covenant or condition under this Note or the other Loan Documents, or of any default by Maker under this Note or the other Loan Documents, or any failure by Payee to insist upon strict performance by Maker of any term, covenant or condition contained in this Note or the other Loan Documents, shall be effective or binding on Payee only if made in writing by Payee; no such waiver shall be implied from any omission by Payee to take action with respect to any such term, covenant, condition or default. No express written waiver by Payee of any term, covenant, condition or default shall affect any other term, covenant, condition or default or cover any other time period than the application of any such term, covenant or condition to the matter as to which a waiver has been given or the default or time period specified in such express waiver. This Note may be amended only by an instrument in writing signed by Maker and Payee.

6

Exhibit _____

(f)     Severability. If any part of this Note is declared invalid for any reason, such shall not affect the validity of the rest of this Note. The other parts of this Note shall remain in effect as if this Note had been executed without the invalid part. The parties declare that they intend and desire that the remaining parts of this Note continue to be effective without any part or parts that have been declared invalid.

(g)     Joint and Several Liability. If more than one person has signed this Note, it shall be the joint and several obligation of all such persons.

11.     Waivers. Each party comprising Maker acknowledges and agrees that an Event of Default by one of them will constitute an Event of Default by all of them, and since each party comprising Maker will be responsible and liable in the event of an Event of Default by any party comprising Maker, each party comprising Maker may be considered as a surety for each other party comprising Maker. Therefore, each party comprising Maker hereby expressly and irrevocably waives:

(a)     all claims of waiver, release, surrender, alteration, or compromise and all defenses, counterclaims, recoupment, reductions, limitations, impairments, or terminations whether arising hereunder or otherwise;

(b)     the benefit or benefits, if any, of any statute of limitations affecting the Maker's liability pursuant to this Note;

(c)     diligence, presentment, demand for payment, protest, notice of protest, notice of dishonor, notice of nonpayment, filing of claims with any court, and any proceeding to enforce any provision of this Note or any Loan Document;

(d)     any right to require a proceeding first against any other person for the performance of the obligations under this Note, and any benefit from any other security that may be held by the Payee;

(e)     any defense based on any lack of authority of the officers, directors, or agents purporting to act on behalf of any party comprising Maker or any defect in the formation of any party comprising Maker;

(f)     any right of subrogation, contribution, or reimbursement against any other party comprising Maker, any right to enforce any remedy that any party comprising Maker has or may in the future have against any other party comprising Maker, any right that a party comprising Maker may now or later acquire against any other party comprising Maker that arises from the existence or performance of any party comprising Maker's obligations under this Note or the Loan Documents, and any benefit of and any right to participate in any security for the obligations of any other party comprising Maker under this Note or secured by any of the Loan Documents;

(g)     any right to require the Payee to marshal assets, and each party comprising Maker agrees that the Payee has no obligation regarding the order in which it exercises its remedies against any Property;



(h)     any right that any full or partial exoneration of a party comprising Maker, whether by order of a Bankruptcy Court or otherwise, will be an exoneration of any other party comprising Maker;

(i)     all rights and defenses that any party comprising Maker may have because this Note is or may be secured by real property. This means, among other things:

(i)     the Payee may collect from a party comprising Maker without first foreclosing on any real or personal property collateral pledged by any other party comprising Maker; and

(ii)     if the Payee foreclose on any real property pledged by any party comprising Maker, (A) the amount of the debt may be reduced only by the price for which that property is sold at the foreclosure sale, even if the property is worth more than the sale price, and (B) the Payee may collect from the party comprising Maker even if the Payee, by foreclosing on the real property, has destroyed any right the party comprising Maker may have to collect from any other party comprising Maker;

(j)     all rights and defenses arising out of an election of remedies by the Payee, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Maker's rights of subrogation and reimbursement against any party comprising Maker by the operation of applicable law or otherwise; and

Without limiting the generality of the foregoing, the obligations of each party comprising Maker pursuant to this Note and the rights of the Payee to enforce the same by proceedings, whether by action at law, suit in equity, or otherwise, shall not be in any way affected by and each party comprising Maker hereby waives any defense to its obligations hereunder based upon or related to (i) any insolvency, bankruptcy, moratorium, liquidation, reorganization, readjustment, composition, dissolution, winding up, or other proceeding involving or affecting any party comprising Maker or others, or (ii) any guaranty or other security at any time held, directly or indirectly, for the payment and performance of the obligations secured hereby or the modification, cancellation, rescission, or release thereof, or the Payee's failure to pursue any remedy with respect thereto.

*[Signatures appear on following page.]*

THE JOBS FILM, LLC,
a Texas limited liability company

By: _____
    John Harrison,
    CFO and Authorized Signatory


THE FIVE STAR INSTITUTE, LLC,
a Texas limited liability company

By: Magnolia Publishing Partnership, Ltd.,
    a Texas limited partnership,
    its Sole Member

    By:  MMG Ventures, Inc.,
         a Texas corporation,
         its General Partner

         By: _____
             Mark Hulme, President



**Three Point Capital**

August 4, 2014

<u>*Via E-Mail and Overnight Courier*</u>

The Five Star Institute, LLC
1909 Woodall Rodgers Freeway, Ste. 300
Dallas, Texas 75201
Attention: John Harrison

The Jobs Film, LLC
c/o The Five Star Institute, LLC
1909 Woodall Rodgers Freeway, Ste. 300
Dallas, Texas 75201
Attention: John Harrison

  Re: Notice of Acceleration of Maker's Obligations Under Secured Promissory Note of
     December 10, 2013 and Other Loan Documents

Dear Mr. Harrison:

  Under the terms of the Secured Promissory Note of December 10, 2003 ("Note") in the amount of $2,650,000 made by The Jobs Film, LLC ("Jobs") and The Five Star Institute, LLC ("Five Star" and together with Jobs, collectively the "Maker"). Maker was obligated to make at least $780,000 in principal repayment by July 10, 2014. See Note at paragraph 1(b)(i). Maker failed to make the required principal reduction payments and is therefore in default. Maker was obligated to reduce the Note principal to $1,870,000 by July 10, 2014. The principal as of that date was $2,109,849.52. The six-day grace period under paragraph 6(a) of the Note expired July 16, 2014 and Maker has failed to make the required payment.

  NOTICE IS HEREBY GIVEN that pursuant to the provisions of paragraph 7(b) of the Note, Three Point Capital, LLC ("Payee") declares all of Maker's obligations under the Note and any other Loan Documents to be immediately due and payable;

  NOTICE IS GIVEN that from and after your default, interest has been calculated and continues to accrue at the "Default Rate" referenced in paragraph 7(a) of the Note.

  Payee provided you on March 18, 2014 written Notice of Default Under Assigned Credit Documents. None of such defaults were cured within the 30-day cure period.

  Full payment of the principal and interest due under the Note in the amount of $2,141,427.22 as of August 4, 2014 together with all interest due thereon, at the Default Rate, through the date of payment is hereby demanded. Nothing in this Notice may be construed to modify or waive any provision of the Note, the Guaranty of December 10, 2013 by Mark Hulme,



Exhibit _____

**17**

The Five Star Institute, LLC
August 4, 2014
Page 2

the Security Agreement or any of the Assigned Credit Documents.  Payee reserves each and all of its remedies under the Note and the related Loan Documents.

Payee demands immediate reimbursement by Maker of all of its reasonable attorneys' fees, costs, expenses, including accounting and expert fees, and out of pocket expenses incurred or to be incurred under the provisions of paragraph 10(c) of the Note.

Three Point Capital, LLC

By: _____

David Gendron
Managing Member

By: _____

Michael Hansen
Managing Member

cc:    Mr. Mark Hulme c/o Five Star Institute
       Robert E. Wynner, Esq.

W:\Working\20818\07\W0123872.DOC

Exhibit _____

18

8/4/2014                          FedEx Ship Manager - Print Your Label(s)

From: (310) 546-8118          Origin ID: HHRA    
David Gendron
Three Point Capital                                            Ship Date: 04AUG14
2041 Rosecrans Avenue                                          ActWgt: 1.0 LB
Suite 322                                                      CAD: 101479844/INET3550
EL SEGUNDO, CA 90245
                                                              Delivery Address Bar Code

                                 J14201408I903uv
SHIP TO: (817) 360-7275          BILL SENDER      
**John Harrison**                                 Ref #
**Five Star Institute**                           Invoice #
**1909 Woodall Rodgers Freeway**                  PO #
**300**                                           Dept #
**DALLAS, TX 75201**

                                                              **TUE - 05 AUG 8:00A**
                                                              **FIRST OVERNIGHT**
                                                 TRK#  7707 5884 6725
                                                 0201                         **75201**
                                                                             TX-US
                                                 **A1 KIPA**                   **DFW**

                                                 

                                                 522G1/ECF2/8AC9

**After printing this label:**

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| THREE POINT CAPITAL, LLC | THE JOBS FILM, LLC, a Texas limited liability company; THE FIVE STAR INSTITUTE, LLC, a Texas limited liability company; and DOES 1 through 10, inclusive |

| (b) County of Residence of First Listed Plaintiff    Delaware | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| Gary W. Nevers, Esq. Roxanne Torabian-Bashardoust, Esq. Nevers, Palazzo, Packard, Wildermuth & Wynner, PC 31248 Oak Crest Dr., Suite 100, Westlake Village, CA 91361.  (818)879-9700 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 2,141,427.22

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

Breach of Secured Promissory Note.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Matters | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY:        Case Number: | |
|---|---|
| CV-71 (06/14) | CIVIL COVER SHEET | **CV14-6137** | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E:  Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F:  Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**          ☒ NO          ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**          ☒ NO          ☐ YES

If yes, list case number(s):     Action against guarantor on Guaranty is being filed concurrently.

Civil cases are related when they:

☒ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** /s/Gary W. Nevers          DATE:  August 5, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |